STATE *ex rel.* VIRGIL COGAR

*v.*

HONORABLE WILLIAM M. KIDD, *judge,*

CIRCUIT COURT, WEBSTER COUNTY

(No. 13851)

Decided May 24, 1977.

*Dan O. Callaghan,* for relator.

*Chauncey H. Browning,* Attorney General, *Richard E. Hardison,* Deputy Attorney General, *William D. Highland,* Assistant Attorney General, for respondent.

MILLER, JUSTICE:

This is an original action in prohibition brought by a defendant under indictment for embezzlement to test the constitutionality of the embezzlement statute, *W. Va. Code,* 61-3-20. Petitioner's principal claim is the statute creates an impermissible presumption of guilt, vio-

lating his rights under Article III, Sections 5 and 10 of the *West Virginia Constitution* and the Fifth and Fourteenth Amendments of the *United States Constitution*. We agree, but hold that the entire embezzlement statute is not thereby rendered unconstitutional.

The theory urged by the petitioner is the same as that discussed recently by this Court in *Pinkerton v. Farr*, ___ W. Va. ___, 220 S.E.2d 682 (1975). There, *W. Va. Code*, 61-6-7, commonly known as the Red Men's Act, was declared unconstitutional because it contained a presumption of guilt of the charge of conspiracy on proof that the defendant was present, aiding and abetting the commission of the crime. The presumption was held to be unconstitutional in that:

> "(1) [I]t infringes upon an accused's right against self-incrimination; (2) it destroys the presumption of innocence to which an accused is entitled; and, (3) it has evidentiary effect which permits conviction by presumption rather than by proof beyond a reasonable doubt." [220 S.E.2d at 685]

We find the reasoning of *Pinkerton* compelling and applicable also to the presumptions contained in *W. Va. Code*, 61-3-20.

Two unconstitutional presumptions are contained in the statute. The reason there are two presumptions is that the embezzlement statute contains two separate embezzlement offenses. Both presumptions were added to the embezzlement statute by Chapter 18 of the 1903 Acts of the Legislature, when the statute was substantially amended and a new substantive crime, relating solely to embezzlement by public officials, was added. This offense is currently found in the first sentence of the second paragraph of *W. Va. Code*, 61-3-20.[1]

[1] "And whenever any officer, agent, clerk or servant of this State, or of any county, district, school district, or municipal corporation, shall appropriate or use for his own benefit, or for the benefit of any other person, any bullion, money, bank notes, drafts, security for money, or funds, belonging to this State or to any such county, district, school district or municipal corporation, he shall be held to have embezzled the same, and be guilty of the larceny thereof."

The first presumption, in the last sentence of the first paragraph, gives rise to a presumption of guilt where the property is not returned by the defendant within thirty days after a demand is made on him for its return.[2] The second, in the last sentence of the second paragraph, makes the failure to account for or to pay over the property, prima facie evidence of the defendant's guilt.[3]

The first presumption bears directly on the defendant's guilt. This is the ultimate issue that a jury must decide. While this presumption contains language permitting the defendant to rebut its effect, it operates to shift the burden of proving innocence to the defendant. The State cannot by a statutory presumption of guilt remove the defendant's constitutional presumption of innocence and the constitutional right to remain silent. *Pinkerton v. Farr, supra; State v. Boyd,* ____ W. Va. ____, 233 S.E.2d 710 (1977).

The second presumption, which relates to the crime of embezzlement by a public official is not as broad as the first presumption. It creates a presumption of prima facie evidence of appropriation by the defendant's fail-

---

[2] "In the prosecution of any such officer, agent, clerk or servant, charged with such embezzlement, fraudulent conversion or larceny, if it appear that the possession of such bullion, money, bank notes, drafts, security for money, or other property, is unlawfully withheld by such officer, agent, clerk or servant from the person or persons entitled thereto, and that such officer, agent, clerk or servant has failed or refused to restore or account for such bullion, money, bank notes, drafts, security for money, or other property, within thirty days after proper demand has been made therefor, such accused officer, agent, clerk or servant shall be presumed to be guilty of such offense; but the accused may rebut such presumption by disproving any such facts, or by other competent testimony germane to the issue, upon the trial."

[3] "The failure of any such officer, clerk or servant to account for or pay over, as required by law, any such bullion, money, bank notes, drafts, security for money, or funds, shall be prima facie evidence that he has so appropriated or used the same for his own benefit or for the benefit of such other person."

ure to account or pay over. Appropriation is one of the essential elements of this crime.[4]

This Court in *State v. Pendry,* ___ W. Va. ___, 227 S.E.2d 210 (1976), held that the State must prove every element of crime beyond a reasonable doubt and is not entitled by way of a presumption or inference to avoid the proof of an element beyond a reasonable doubt. *Pendry* impliedly rejected the "rational connection" test, which is a means of upholding a presumption and which was discussed at some length in *Pinkerton v. Farr, supra.* In *Pendry,* the presumption occurred by virtue of instructions offered by the State. Here the presumptions are embedded in the statute defining the crime and thus are reachable by a writ of prohibition. Compare *Pinkerton v. Farr, supra,* with *State ex rel. Peacher v. Sencindiver,* ___ W. Va. ___, 233 S.E.2d 425 (1977).

Although *W. Va. Code,* 61-3-20, contains unconstitutional presumptions, this does not render the entire statute unconstitutional. Each offense is distinct and severable from its respective presumption. Where portions of a statute are found to be unconstitutional, the entire statute will not be declared invalid if what remains is capable of standing independent of the rejected portion. *State v. Flinn,* ___ W. Va. ___, 208 S.E.2d 538, 549 (1974); *State v. Heston,* 137 W. Va. 375, 71 S.E.2d 481 (1952).

We therefore conclude that the presumptions contained in the embezzlement statute are unconstitutional; that the remaining portion of the statute is not thereby rendered unconstitutional; and that a criminal proceeding based upon the substantive crime of embez-

---

[4] It appears from a comparison of the two embezzlement crimes set out in *W. Va. Code,* 61-3-20, that the crime of embezzlement by a public official does not contain as many elements of proof as the general embezzlement crime. It is generally recognized that the Legislature may set higher standards on public officials by defining embezzlement by public officials without all of the elements found in the general embezzlement statutes. *See, State v. Hanna,* 224 Or. 588, 356 P.2d 1046 (1960); 29A C.J.S. *Embezzlement* §22a; Perkins, Criminal Law 294, *et seq.,* (2nd ed. 1969).

zlement is not impeded by striking out the unconstitutional presumptions. The effect of our ruling is that the State may not rely upon the unconstitutional presumptions contained in *W. Va. Code*, 61-3-20, in any prosecution.

Petitioner also questions the constitutionality of *W. Va. Code*, 62-2-5, claiming that it violates his due process rights.[5] Alternatively, he argues that even if constitutional, his indictment based thereon is void because it does not comply with the statute, in that it consists of a single count of embezzlement containing 130 separate dates and amounts alleged to have been embezzled. The dates extend from July 1, 1974, through December 24, 1975, and the amounts range from $1.21 to $130.00.

Petitioner predicates his due process argument on the assertion that the statute is fundamentally unfair as it enables an indictment to be drawn for embezzlement charging "any number of distinct acts of embezzlement." *Pinkerton v. Farr, supra,* is cited generally for the proposition that "due process" is ultimately measured by the concept of fundamental fairness.

Although the right of the Legislature to create and define crimes and to regulate their prosecution is extremely broad, that right is subject to constitutional limitations. The Legislature is required to define a criminal offense with some particularity. Otherwise, it may

---

[5] "In a prosecution against a person accused of embezzling, or fraudulently converting to his own use, bullion, money, bank notes, or other security for money, *it shall be lawful, in the same indictment, to charge and thereon to proceed against the accused, for any number of distinct acts of such embezzlement or fraudulent conversion which may have been committted by him within six months from the first of the last of such acts*; and it shall be sufficient to allege the embezzlement or fraudulent conversion to be money, bullion, bank notes, or security for money without specifying the particular kind of money, bank notes, bullion or security for money, as the case may be; and such allegation, so far as it regards the description of the property, shall be sustained, if the accused be proved to have embezzled or fraudulently converted to his own use, any bullion, money, bank notes, or security for money (although the particular item or thing embezzled or converted be neither alleged not proved.)" [Italics supplied]

be unconstitutionally vague. *West Virginia Constitution*, Article III, Section 4; *State v. Flinn, supra*. It cannot create presumptions which contravene a defendant's constitutional right to the presumption of innocence or the right to remain silent. *West Virginia Constitution*, Article III, Sections 5 and 10; *Pinkerton v. Farr, supra*. It may not impose a punishment which is cruel and unusual, and penalties must be proportioned to the character and degree of the offense. West Virginia Constitution, Article III, Section 5; *State ex rel. Heck's, Inc. v. Gates*, 149 W. Va. 421, 141 S.E.2d 369 (1965).

The validity of any indictment is tested in the first instance by the requirement that it plainly inform the defendant of the character and cause of the accusation.[6] *West Virginia Constitution*, Article III, Section 14, *State v. LaManca*, 142 W. Va. 549, 96 S.E.2d 667 (1975); *State ex rel. Brown v. Thompson*, 149 W. Va. 649, 142 S.E.2d 711 (1965), *cert. denied*, 382 U.S. 940 (1965); *Pyles v. Boles*, 148 W. Va. 465, 135 S.E.2d 692 (1964).

We see nothing on the face of *W. Va. Code*, 62-2-5, that compels us to declare it unconstitutional. It contains no unconstitutional penalties or presumptions. The statute does not conflict with the substantive crime of embezzlement to render it vague. It is procedural in nature and is designed to provide a method for drawing an indictment for embezzlement where there are multiple acts of embezzlement.

Merely because the nature of the alleged criminal activity is complex and does not lend itself to a tidy sum-

---

[6] While the Legislature may by statute authorize the joining of separate crimes in the same indictment in different counts, this does not in all cases mean that the defendant can be convicted of each separate crime. *State v. Koton*, ___ W. Va. ___, 202 S.E.2d 823, 827 (1974), held it improper under the facts of that case to convict a defendant on grand larceny and receiving stolen goods even though the statute authorized the joinder of such counts. *W. Va. Code*, 62-2-24. *Koton* relied on *Milanovich v. United States*, 365 U.S. 551, 81 S.Ct. 728, 5 L. Ed. 2d 773 (1961), which is part of a line of cases considering whether there are constitutional limitations on the power of a legislative body to fragment a criminal transaction by defining separate crimes for its component parts.

marization, it does not follow that the State's attempt to define it is violative of the defendant's due process. Constitutional standards such as "due process" and "fundamental fairness" cannot be equated with simplicity. The requirement to plainly inform the defendant of the nature of the offense charged is to be tested against the complexity of the crime.

The contention that the indictment is void because it encompasses distinct acts of embezzlement extending for more than the six-month period contained in *W. Va. Code*, 62-2-5, in effect asks that we overrule *State v. Wetzel*, 75 W. Va. 7, 83 S.E. 68 (1914). We decline to do so. The holding in *Wetzel* on this point is that separate defalcations or peculations arising out of a single employment and following a common scheme are to be viewed as one distinct act of embezzlement.

Applying the holding of *Wetzel* to the present case, we find that the facts as alleged in the indictment appear to constitute one distinct act of embezzlement.[7] Further, the fact that the prosecutor elected to inform the defendant in the indictment of the specific dates and separate amounts alleged to have been embezzled, rather than waiting to respond to a bill of particulars as did the prosecutor in *Wetzel*, does not distinguish the two cases as claimed by the Petitioner.

The Court in *Wetzel* did not explore the history of *W. Va. Code*, 62-2-5, nor did it seek to determine the purpose for which it was enacted. This might determine the applicability of the statute to a factual situation such as exists here and in *Wetzel*.

The language of *W. Va. Code*, 62-2-5, was adopted from Section 6, Chapter 207 of the 1849 Code of Virginia, which in turn had adopted the language of 2 Will. IV, Chapter 4, Section III (1832), with one notable deletion:

---

[7] The indictment in this case conforms to the statutory form of indictment found in *W. Va. Code*, 62-9-11. This form relates to the first embezzlement offense set out in *W. Va. Code*, 61-3-20. We express no opinion as to its sufficiency for a charge of embezzlement under the second embezzlement offense contained in the embezzlement statute.

"And be it enacted, That it shall be lawful to charge in the Indictment to be preferred against any Offender under this Act, and to proceed against him for any Number of distinct Acts of Embezzlement or of fraudulent Application or Disposition as aforesaid, *not exceeding Three,* which may have been committed by him within the Space of Six Calendar Months from the first to the last of such Acts; . . . ." [Italics supplied] 2 Will., *supra.*

It appears the limitation of three distinct acts within a six-month period evolved from an effort to cure problems arising in indictments for embezzlement rather than for the purpose of a statute of limitations. *See* 9 Halsbury, The Laws of England 645, *et seq.* (1909).

The problem sought to be cured was the confusion that appears to have existed in the English common law on the question of whether distinct crimes could be placed in separate counts of the same indictment. *Queen v. Castro,* 5 Q.B.D. 490 (1880). As to the United States Supreme Court's view on the status of the English common law in this area, compare *McElroy v. United States,* 164 U.S. 76, 41 L. Ed. 355, 17 S. Ct. 31 (1896), with *Pointer v. United States,* 151 U.S. 396, 38 L. Ed. 208, 14 S. Ct. 410 (1894).

The result of the English statute was to permit the placing in the same indictment, by way of separate counts, separate and distinct acts of embezzlement that did not occur by way of a common design and intent. 9 Halsbury, The Laws of England, *supra* at 648; *Regina v. Purchase,* 174 Eng. Rep. 660 (1842).

In other words, the statute was not designed for the purpose of handling individual acts of embezzlement done pursuant to a common scheme and a common intent, such as in *Wetzel* or in issue here, but was enacted to provide for those situations where there is more than one distinct act of embezzlement.

The English common law recognized, as did this Court in *Wetzel,* that where individual acts of embezzlement

were accomplished in accordance with a common scheme, they could be treated as a single act and placed in one count of an indictment. *Regina v. Henwood,* 9 Crim. Law Cases 526 (1870); *Regina v. Firth,* 9 Crim. Law Cases 234 (1869); *Regina v. Bleasdale,* 2 Car. & K. 765, 175 Eng. Rep. 321 (1848).

Virginia has followed the *Wetzel* case in construing its similar statute. *Challenor v. Commonwealth,* 209 Va. 789, 167 S.E.2d 116 (1969); *Webb v. Commonwealth,* 204 Va. 24, 129 S.E.2d 22 (1963). Other jurisdictions have recognized the common law rule permitting the right to accumulate individual peculations done pursuant to a common scheme and intent in one count of an indictment. *Gill v. People,* 139 Colo. 401, 339 P.2d 1000 (1959); *Smith v. State,* 61 Okla. Crim. App. 427, 69 P.2d 394 (1937); *State v. Gordon,* 146 Kan. 41, 68 P.2d 635 (1937).

This same type of problem arises under larceny indictments where there are a number of separate takings accomplished pursuant to a common plan and intent. It appears to be generally the rule that where a common plan and intent can be shown, it is proper to accumulate the offenses into a single count charging one total act of larceny. *See,* Annot., 53 A.L.R.3d 398.

It does appear that where the State elects to accumulate the acts, contending that they represent a common scheme and intent, it is incumbent upon the State to prove these facts. *State v. Vining,* 2 Wash. App. 802, 472 P.2d 564 (1970); *Commonwealth v. England,* 350 Mass. 83, 213 N.E.2d 222 (1966); *Gill v. People, supra; Miller v. State,* 210 Tenn. 322, 358 S.W.2d 324 (1953); Annot., 53 A.L.R.3d at 407.

There appears to be considerably more cases treating the common scheme and intent problem under larceny than under embezzlement. This may be because in larceny there exists the distinction between grand and petit larceny. As a result, the challenge is made to the common scheme and intent in order to prevent cumulating petit larceny acts to grand larceny.

In some States, the embezzlement statute carries its own penalty regardless of the amount taken. 29A C.J.S. *Embezzlement* § 37c. Our embezzlement statute, except for banking employees, is tied to the larceny statute for punishment. While this point was not discussed in *Wetzel,* the State, once it elects to cumulate separate peculations, must prove a common design and common criminal intent, and the question of whether the cumulative act is grand or petit larceny by embezzlement may depend on the proof and would be determined by instructions to the jury.

For the reasons stated above, the writ of prohibition is denied.

*Writ denied.*