# RESCRIPT OPINIONS.

COMMONWEALTH *vs.* ROLFE H. GREEN. No. 04-P-1762. April 6, 2006. *Posses-sion of a False Note with Intent to Utter. Tendering a False Note. Larceny. Attempt. Practice, Criminal,* Instructions to jury.

After a jury trial in the Superior Court, the defendant, Rolfe H. Green, was convicted of (1) attempted larceny of more than $250 (G. L. c. 266, § 30), in violation of G. L. c. 274, § 6; (2) possession of a false note with intent to utter, in violation of G. L. c. 267, § 12; and (3) tendering a false note, in violation of G. L. c. 267, § 10. The subject document in each of the indictments was the same: a single check bearing the name of the Ritz Carlton Hotel, in the amount of $320,000.00, payable to the defendant's business. The principal issue argued by the defendant is that a check is not within the scope of G. L. c. 267, §§ 10 and 12. He also argues error in the jury instructions and claims that the convictions of uttering and possessing with intent to utter are based on the same conduct involving one check and are duplicative. We affirm the conviction of attempted larceny and reverse the two remaining convictions.

1. *Background.* The Commonwealth presented evidence that in March, 2002, the defendant opened a business checking account at Citizens Bank in the name of The Computer Consulting Network (Network). On March 13, 2002, the bank received a check via Federal Express in the name of the Ritz Carlton Hotel for $320,000.00 made payable to Network (the check).

For reasons that need not be recited here, the bank was already in the process of closing the defendant's account. After the bank received the check, a security officer of the bank telephoned the defendant to arrange a meeting the next day at a branch office in Boston. The officer notified the Boston police department of the scheduled meeting, and on March 14, 2002, detectives arrived at the branch office to observe the meeting.

At the meeting the bank officer handed the check to the defendant and he endorsed it, telling the officer "that he was a new business owner [and] that he was hired by the [hotel] as a contractor to set up their computer systems." The bank officer testified that the defendant was "very anxious to get the funds into the account in order to begin his consulting business" and "said he needed those funds in order to begin his project with the [hotel]." He assured the officer that "the funds would be good because the [hotel] hired him." The defendant initialed a deposit slip, and the detectives arrested him.

At the trial, there was evidence that the comptroller for the hotel, together with a finance officer, researched the hotel's financial records but could find no record that the hotel had issued the check. In addition, testimony from the Commonwealth's witnesses indicated that the hotel was closed for renovations, the check was not printed through the hotel's computer system, and the

appearance of the check, in some respects, was unlike genuine hotel checks. Finally, the hotel's comptroller notified the bank that the check was not issued by the hotel, stating that "[the check] wasn't a valid check made out from the Ritz Carlton Boston."

2. *Discussion.* (a) *Indictments charging possession and uttering of a false note.* The document that is the predicate for the two indictments is a check, and a check is not within the documents enumerated in G. L. c. 267, §§ 10 and 12.[1] The Commonwealth and the defendant, in their briefs, rely upon the definitions in the Uniform Commercial Code, G. L. c. 106, § 3-104. The Commonwealth argues that a check comes within the definitions in both G. L. c. 267, §§ 10 and 12, because under G. L. c. 106, § 3-104(*e*), an instrument may be both a check and a note if it is both an order and promise. The defendant argues that the check is not a note or a promissory note or bank bill or bank note under §§ 10 and 12 and meets the statutory definition of a check under G. L. c. 106, § 3-104(*f*).[2] We are persuaded by the defendant's argument. The check in this case cannot be the basis for indictment or proof under §§ 10 and 12 of c. 267, and we therefore reverse the convictions on those charges.

(b) *Sufficiency of evidence on indictment for attempted larceny.* The defendant argues that the evidence is insufficient to prove that the check is false, forged, counterfeit, or altered. We disagree. The evidence was sufficient for the jury to find beyond a reasonable doubt that the defendant attempted larceny by the overt act of attempting to deposit the check. The background facts of the brief transaction and the testimony from the hotel employees were

---

[1]General Laws c. 267, § 10, as amended by St. 1974, c. 369, § 3, provides, in pertinent part:

> "Whoever utters or passes or tenders in payment as true any such false, altered, forged or counterfeit note, certificate or bill of credit for any debt of the commonwealth, or a bank bill or promissory note payable to the bearer thereof or to the order of any person, issued as aforesaid, or an instrument described as a United States Dollar Traveller's Check or Cheque, purchased from a bank or other financially responsible institution, the purpose of which is a source of ready money on cashing the instrument without identification other than the signature of the purchaser, knowing the same to be false, altered, forged or counterfeit, with intent to injure or defraud, shall be punished . . . ."

General Laws c. 267, § 12, as amended by St. 1974, c. 369, § 4, provides, in pertinent part:

> "Whoever brings into this commonwealth or has in his possession a false, forged or counterfeit bill or note, in the similitude of the bills or notes, payable to the bearer thereof or to the order of any person, issued by or for any bank or banking company, or an instrument described as a United States Dollar Traveller's Check or Cheque, purchased from a bank or other financially responsible institution, the purpose of which is a source of ready money on cashing the instrument without identification other than the signature of the purchaser, with intent to utter or pass the same or to render the same current as true, knowing the same to be false, forged or counterfeit, shall be punished . . . ."

[2]Section 3-104(*f*), as appearing in St. 1998, c. 24, § 8, provides, in relevant part: " 'Check' means (i) a draft, other than a documentary draft, payable on demand and drawn on a bank or (ii) a cashier's check or teller's check."

clearly sufficient to permit the jury to find that the check was counterfeit, and the attempted negotiation was sufficient as an overt act. "The crime of attempt consists of the intent to commit the underlying crime coupled with an overt act." *Commonwealth* v. *Horton*, 434 Mass. 823, 836 (2001). In the context of a fraudulent check, "[l]arceny is the taking without right of the personal property of another with the specific intent to deprive the other of the property permanently." *Commonwealth* v. *Murray*, 401 Mass. 771, 772 (1988). Here the evidence established that the defendant intended to take the property of the bank permanently and committed the overt act of trying to negotiate and deposit a counterfeit check in furtherance of that intent.

(c) *Jury instructions.* The defendant argues that the judge failed to instruct the jury on essential elements of each offense. We look at the jury instructions in connection with the attempted larceny indictment only. We conclude that the instructions were sufficient. In evaluating a challenge to jury instructions the court will "consider the charge, taken as a whole, and assess the possible impact of the alleged error on the deliberations of a reasonable juror, i.e., whether a reasonable juror could have used the instruction incorrectly." *Commonwealth* v. *Rosa*, 422 Mass. 18, 27 (1996), citing *Commonwealth* v. *Torres*, 420 Mass. 479, 490-491 & n.10 (1995). The defendant did not object to the trial judge's instructions on attempted larceny, presumably because the judge followed the defendant's proposed instructions closely. Accordingly, this court considers only whether there was a substantial risk of a miscarriage of justice, assuming any irregularity. *Commonwealth* v. *Robinson*, 444 Mass. 102, 105 (2005).

The defendant argues that on the attempted larceny charge, the judge failed to instruct the jury regarding the specific overt act. The defendant, however, provides no support for the assertion that the judge was obligated to specify the overt act to the jury and to give instructions regarding the specified overt act. Upon our review, we see no danger that the jury would have considered anything other than the defendant's attempt to cash the check as the relevant overt act, as it was the only significant act of the defendant described in the evidence.

On the indictment charging attempted larceny, the judgment is affirmed. On the indictments charging possession of a false note with intent to utter, in violation of G. L. c. 267, § 12, and tendering a false note, in violation of G. L. c. 267, § 10, the judgments are reversed, the verdicts are set aside, and judgments are to enter for the defendant.[3]

*So ordered.*

*Estera Halpern* for the defendant.

*Joseph M. Ditkoff*, Assistant District Attorney (*James P. Burbridge* with him) for the Commonwealth.

---

[3]We need not discuss the other issues raised by the defendant.